IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESUSA LLANES,

           Plaintiff,

v.

ANDREA ZALEWSKI, SILVER RIDGE
ADULT FOSTER CARE HOME, LLC,

           Defendants.

Case No. 3:18-cv-00267-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

    Plaintiff Jesusa Llanes ("Llanes") filed this case against Defendants Andrea Zalewski ("Zalewski") and Silver Ridge Adult Foster Care Home, LLC ("Silver Ridge") (together, "Defendants"), alleging that Defendants violated the minimum and overtime wage requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216. (ECF No. 1.) In response, Defendants asserted state law counterclaims for quantum meruit, conversion, and unjust enrichment. (ECF No. 21.) Llanes filed an answer to Defendants' counterclaims, asserting her own state law counterclaims for wrongful divestment of possession contrary to legal estate interest, conversion, and intentional infliction of emotional distress. (ECF No. 43.)

Pending before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 46, 50.) Defendants have also moved to dismiss Llanes' counterclaims for lack of subject matter jurisdiction. (ECF No. 55.) The Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367, and all parties have consented to the jurisdiction of a U.S. Magistrate Judge under 28 U.S.C. § 636(c). For the following reasons, the Court grants Defendants' motion for summary judgment, denies Llanes' motion for summary judgment, and denies as moot Defendants' motion to dismiss.

## BACKGROUND[1]

Silver Ridge is a Class Two adult foster care home that provides room and board to its five residents. (Declaration of Andrea Zalewski, Apr. 30, 2019 ("Zalewski Decl.") ¶¶ 2-4.) The residents are all over sixty-five years old and have medical or psychological conditions, including schizophrenia, insomnia, mood disorders, and depression. (Declaration of Jesusa Llanes, Apr. 30, 2019 ("Llanes Decl.") ¶ 8.) Oregon law does not require a Class Two facility to employ medical professionals. (Zalewski Decl. ¶ 4.)

In 2014, Defendants hired Llanes as a resident care manager. (Llanes Decl. ¶ 6.) In that role, Llanes cared for Silver Ridge's residents on a twenty-four hour basis. (Llanes Decl. ¶ 7.) For example, Llanes prepared and served meals, tracked and administered medication, maintained medication administration records, coordinated care with outside providers, monitored and enforced house policies, and performed housework. (Llanes Decl. ¶ 7.) Llanes did not diagnose the residents or prescribe medicine. (Declaration of Katherine Acosta, Apr. 30, 2019 ("Acosta Decl.") ¶ 2, Ex. 1 (Llanes Dep. 58:5-13, Feb. 20, 2019 ("Llanes Dep.")).)

---

[1] The Court views the facts in the light most favorable to Llanes, and draws all inferences in her favor.

Llanes also helped the residents with grooming and general hygiene, maintained peace between the residents, assisted the residents with cash or account management, and provided first-aid care. (Llanes Decl. ¶ 7.) On a weekly basis, Llanes purchased groceries and medication, received and distributed mail and food deliveries to the residents, and received and processed goods that Defendants ordered online. (Llanes Decl. ¶ 7.) Llanes purchased food and medication from local stores and pharmacies, and did not order goods online. (Llanes Dep. 47:19-48:6; 49:11-14; 69:5-70:6; 70:21-71:5.)

Pursuant to an employment agreement, Llanes received a $3,000 monthly salary, as well as room and board. (Acosta Decl. ¶ 2, Ex. 3.) Throughout her tenure at Silver Ridge, Llanes worked seventy-five hours per week. (Llanes Decl. ¶ 11.) She did not receive overtime pay. (Llanes Decl. ¶ 11.)

In March 2017, Llanes informed Zalewski that she was engaged, and asked if her fiancé could live with her at Silver Ridge. (Llanes Decl. ¶ 13.) Zalewski said yes. (Llanes Decl. ¶ 13.) Seven months later, Zalewski terminated Llanes' employment. (Llanes Decl. ¶ 14.) Defendants changed the locks and left Llanes' belongings in the driveway. (Llanes Decl. ¶ 14.)

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On a motion for summary judgment, courts must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citations omitted). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## II. ANALYSIS

### A. FLSA Claims

Defendants ask the Court to grant summary judgment on Llanes' FLSA claims because she does not qualify for FLSA coverage. (Def.'s Mot. at 8.)

FLSA applies to employees who are (1) "engaged in commerce or in the production of goods for commerce" (individual coverage) or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. §§ 206(a), 207(a)(1). The "employee has the burden to show that there is coverage, whether individual or enterprise." *Mendoza v. Detail Sols., LLC,* 911 F. Supp. 2d 433, 438-39 (N.D. Tex. 2012) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 120 (1946)).

#### 1. Individual Coverage

FLSA applies to individual employees "engaged in commerce." 29 U.S.C. § 206(a). The Supreme Court has made clear that an employee does not "engage in commerce" if the employee's activities merely "affect or indirectly relate to interstate commerce[.]" *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943). Instead, an employee engages in commerce where her activities "are actually in or so closely related to the movement of the commerce as to be a part of it." *Id*.; *see also Pilkington v. Abuela's Cocina LLC*, No. CV-18-00281-TUC-RCC, 2019 WL 1077878, at *1 (D. Ariz. Mar. 7, 2019) ("The test is whether the work [of the employee] is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity.") (quoting

*Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955)).[2] In other words, an employee engages in commerce under FLSA if she "work[s] for an instrumentality of interstate commerce," or regularly uses instrumentalities of interstate commerce in her work. *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citations omitted).

Defendants argue that FLSA's individual coverage does not apply to Llanes because she did not regularly engage in interstate commerce. (Def.'s Mot. at 8.) Llanes responds that she qualifies for individual coverage because she performed the following tasks on a weekly basis: (1) buying food and medication from a local store or pharmacy that originated out of state; (2) receiving and distributing interstate mail; and (3) receiving and processing interstate deliveries of food and household goods that Defendants ordered online. (Pl.'s Mot. at 8.) To support her argument that individual coverage exists here, Llanes argues that courts have adopted the Department of Labor's position that FLSA covers employees who regularly handle interstate mail and goods "from or destined for out-of-state sources." (Pl.'s Mot. at 7.)

Contrary to Llanes' argument, courts have consistently held that an employee cannot establish individual coverage simply by buying or handling goods locally, even if the goods originated out of state. *See, e.g.*, *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1316 (11th Cir. 2011) (holding that individual coverage did not apply where the employer "had purchased or leased vehicles that had, at some point, moved in interstate commerce and equipped those vehicles with GPS units that took parts ordered over the internet from other states" because "the point of origin of these vehicles . . . is irrelevant to the issue of individual coverage"); *Thorne*, 448 F.3d at 1267 ("Courts distinguish between merchants who bring

---

[2] The Supreme Court has also recognized that "Congress, by excluding from the [FLSA's] coverage employees whose activities merely 'affect commerce,' indicated its intent not to make the scope of the [FLSA] coextensive with its power to regulate commerce." *Mitchell v. Lubin, McGaughy & Assocs.*, 358 U.S. 207, 264 (1959).

commerce across state lines for sale and the ultimate consumer, who merely purchases goods that previously moved in interstate commerce for intrastate use. Therefore, a customer who purchases an item from Home Depot is not engaged in commerce even if Home Depot previously purchased it from out-of-state wholesalers."); *Barr v. Custom Design & Installation, Inc.*, Case No. 3:13-cv-04925-M, 2015 WL 1255870, at *4 (N.D. Tex. Mar. 19, 2015) ("This Court concludes that an employee engages in purely local activity when she purchases goods from a local retail store to contribute to the operations of an intrastate business, even though the goods previously traveled interstate."); *Yan v. Gen. Pot, Inc.*, 78 F. Supp. 3d 997, 1003 (N.D. Cal. 2015) (holding that the employee did not engage in interstate commerce where he "handled food that was moved interstate prior to arriving at the restaurant" and the food did not "later return to interstate commerce").[3]

Similarly, an employee engages in purely local activity if she receives and handles mail that has moved in interstate commerce. *See Westley v. Love Pet Grooming Salon, Inc.*, No. 8:18-cv-172-T-24 TGW, 2019 WL 249716, at *4 (M.D. Fla. Jan. 17, 2019) (finding that handling and using materials that had once moved in interstate commerce does not support individual coverage because "individual coverage is not affected by the handling of such materials"); *Davis v. Patel*, No. 3:14-cv-764, 2016 WL 4160967, at *8 (M.D. Tenn. Aug. 5, 2016) ("[S]imply receiving mail and phone calls addressed to a business on occasion from another state, as the plaintiffs did here, is not engaging in commerce within the meaning of the FLSA.") (citation omitted); *cf. Wirtz v. Wardlaw*, 339 F.2d 785, 787 (4th Cir. 1964) (holding that "preparing and

---

[3] Llanes also argues that processing and delivering items that have moved in interstate commerce to Silver Ridge's residents creates individual coverage, relying on *Watkins v. Ameripride Servs.*, 375 F.3d 821 (9th Cir. 2004). As Defendants point out, however, *Watkins* did not interpret FLSA. Instead, *Watkins* involved federal regulations governing motor carriers that transport goods in interstate commerce. *Id.* at 825. Llanes does not allege that Silver Ridge transports goods in interstate commerce, and *Watkins* does not apply here.

mailing newspaper clippings, monthly newsletters and business cards" constituted engaging in commerce because the employees "addressed and mailed a substantial number of these items to persons outside" the state).

At least one court has held that employees "who regularly handle interstate mail and telephone calls may be engaged in commerce." *Dixon v. Open Hands Nurseing Agency, LLC*, No. 4:17-cv-02132-RBH, 2018 WL 5995127, at *5 (D.S.C. Nov. 14, 2018). The Court does not find *Dixon* persuasive, however, because Congress defined "commerce" to mean "transportation, transmission, or communication among the several States, or between any State and any place outside thereof." 29 U.S.C. § 203. Llanes did not communicate between the states simply by receiving and delivering mail to Silver Ridge's residents because those are passive, purely intrastate activities. *See Tripodi v. Microculture, Inc.*, 397 F. Supp. 2d 1308, 1315 (D. Utah 2005) (rejecting argument that opening and delivering mail to the company's employees constituted commerce because the employee "did no mailing or transmitting out of state"); *cf. Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 309 (E.D.N.Y. 2014) (finding that the use of a cell phone "*not* for communication between states [] is strictly an intrastate activity" even though "it utilizes interstate technology") (emphasis in original).

*Dixon* also conflicts with the enterprise coverage provision of the FLSA. That provision covers enterprises that have "employees engaged in commerce . . . , *or* . . . handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person[.]" 29 U.S.C. § 203(s)(1)(A)(i) (emphasis added). As the word "or" makes clear, Congress did not consider handling goods that had once moved in interstate commerce and engaging in commerce to mean the same thing. Holding otherwise would render FLSA's "handling" provision superfluous. *See United States v. Jicarilla Apache Nation*, 564 U.S. 162,

185 (2011) ("As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.") (citation omitted).

Beyond buying goods locally, and receiving mail and goods that had once moved in interstate commerce, Llanes offers no evidence suggesting that she engaged in interstate commerce.[4] As the above authorities demonstrate, those activities are not "directly or vitally related" to interstate commerce. *Mitchell*, 349 U.S. at 429. Accordingly, the Court finds that Llanes has not met her burden to prove that she qualifies for individual coverage under FLSA.

### 2. Enterprise Coverage

In 1961, Congress amended FLSA "to provide a second basis for coverage." *Donovan v. Scoles*, 652 F.2d 16, 18 (9th Cir. 1981). "Although the original coverage focused upon the nature of the employees' activities, the new coverage requires analysis of the business itself." *Id.* Congress amended FLSA again in 1966 "to bring certain kinds of non-profit institutions within the scope of 'enterprise' coverage." *Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1010 (9th Cir. 2011).

Enterprise coverage now applies to three types of businesses: (1) businesses with employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce" if the business has more than $500,000 in gross sales; (2) businesses that are "engaged in the operation of a hospital, an institution primarily engaged in care of the sick, the aged, the mentally ill or defective who reside on the premises of such

---

[4] Llanes notes that some courts have recognized that individual coverage attaches when Medicare reimburses the employer for patient care, relying on *Alvarez v. Amb-Trans Inc.*, No. SA-11-CV-179-XR, 2012 WL 4103876, at *3 (W.D. Tex. Sept. 17, 2012). The Court does not find *Alvarez* persuasive because the individual coverage analysis "examines only [the] employee's activities[,]" now the employer's activities. *Dean v. Pac. Bellwether, LLC*, 996 F. Supp. 2d 1044, 1051 (D. N. Mar. I. 2014).

institution"; and (3) businesses whose activities are that of a public agency. 29 U.S.C. §§ 203(s)(1)(A)-(C).

Llanes argues that FLSA applies to Silver Ridge because it is an institution primarily engaged in the care of both the aged and the mentally ill. (Pl.'s Mot. at 9.) Defendants respond that the Ninth Circuit's decision in *Probert* forecloses Llanes' argument. (Def.'s Mot. at 10.) The Court agrees.

*Probert* involved a married couple "who worked as 'house parents'" in the defendant's "Therapeutic Family Homes." *Probert*, 651 F.3d at 1009. The homes housed five children who "were 'severely emotionally disturbed' as defined by the Alaska law that qualifies the [h]omes for Medicaid funding." *Id.* Each child also had "at least one diagnosed mental disorder[.]" *Id.* "The children participated in group therapy conducted by clinicians in the [h]omes, but received most of their medical and psychological treatment outside the [h]omes." *Id.* When the house parents sued for overtime pay under FLSA, the district court held that they were employed by an "institution primarily engaged in the care of the mentally ill or defective[.]" *Id.* (alterations omitted).

The Ninth Circuit reversed. It found that the homes were not "institutions as that term is used in [the FLSA.]" *Id.* at 1011. The Court interpreted the term "institution" by looking at "the neighboring parts of the relevant statute," and explained that the term applies to "hospitals and schools" which "are staffed by professionals and provide more comprehensive medical, psychological, or educational programs, usually for a . . . large[] population." *Id.* Unlike hospital and schools, the homes in *Probert* were "run by two house parents" and housed "no more than five children each[.]" *Id.* As a result, the Court held that the small group homes "were not meant to be included within" the term "institution." *Id.*

Applying these principles here, the Court finds that Silver Ridge is not an "institution" under FLSA. Silver Ridge is not "staffed by professionals"; does not provide "more comprehensive medical, psychological, or educational programs"; and does not serve a "large[] population." *Id.* Like the small group foster homes in *Probert*, Silver Ridge has only one resident care manager and five residents. *See id.* (finding that a group foster home run by "two house parents and housing no more than five children" is "out of place" compared to "hospitals and schools"). Further, Llanes offers no evidence suggesting that Silver Ridge provides comprehensive medical, psychological, or educational programming.

Llanes resists this conclusion on multiple grounds. First, she argues that the legislative history of the 1966 amendment to FLSA classified "homes for the aged" as covered under FLSA. (Pl.'s Resp. at 4.) Second, Llanes asks the Court to defer to guidance from the Department of Labor's Field Operations Handbook ("FOH") that suggests the term "institution" should be interpreted broadly. (Pl.'s Mot. at 12.) Third, Llanes points to district court cases and state case law and regulations interpreting the term "institution" broadly. (Pl.'s Mot. at 11-13.)

In *Probert*, the Ninth Circuit considered the same legislative history Llanes offers here and found that it "does not point to a different conclusion." *Probert*, 651 F.3d at 1012. *Probert* also concluded that the FOH is not "a proper source of interpretive guidance" because the "handbook itself says that it is not used as a device for establishing interpretive policy." *Id.*; *see also McKinnon v. City of Merced*, No. 1:18-cv-01124-LJO-SAB, 2018 WL 6601900, at *6 (E.D. Cal. Dec. 17, 2018) (declining to consider the FOH in light of "Ninth Circuit precedent"). Finally, although other courts outside the Ninth Circuit may have found entities such as Silver Ridge to be covered by the FLSA, *Probert*'s interpretation of FLSA binds this Court.

For these reasons, the Court concludes that Llanes does not qualify for individual or enterprise coverage under FLSA. The Court therefore grants Defendants' motion for summary on Llanes' FLSA claims, and denies Llanes' motion for summary judgment on her FLSA claims and Defendants' affirmative defenses.

### B. State Law Counterclaims

Llanes also asks the Court to grant summary judgment in her favor on Defendants' counterclaims and her own counterclaims. (ECF No. 50.) In response, Defendants move to dismiss Llanes' counterclaims for lack of subject matter jurisdiction, or to strike Llanes' counterclaims. (ECF No. 55.)

The Court lacks original subject matter jurisdiction over the parties' counterclaims because they are state law claims and the parties are not diverse. Having dismissed the only federal claims asserted here, the Court declines to exercise supplemental jurisdiction over the parties' counterclaims. *See* 28 U.S.C. § 1367(c)(3) ("[A] district court[] may decline to exercise supplemental jurisdiction over a claim" if it has "dismissed all claims over which it has original jurisdiction[.]"); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and [the Ninth Circuit has] often repeated, that in the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (en banc) (citation and quotation marks omitted).

///
///
///
///
///

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion for summary judgment (ECF No. 46), DENIES Llanes' motion for summary judgment (ECF No. 50), and DENIES AS MOOT Defendants' motion to dismiss for lack of subject matter jurisdiction. (ECF No. 55.) The Court DISMISSES the parties' state law counterclaims without prejudice.

**IT IS SO ORDERED.**

DATED this 4th day of October, 2019.

*Stacie F. Beckerman*
_____
STACIE F. BECKERMAN
United States Magistrate Judge