IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESUSA LLANES,

                Plaintiff,

        v.

ANDREA ZALEWSKI, SILVER RIDGE
ADULT FOSTER CARE HOME, LLC,

                Defendants.

Case No. 3:18-cv-00267-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Jesusa Llanes ("Llanes") brought this action against Andrea Zalewski ("Zalewski") and Silver Ridge Adult Foster Care Home, LLC ("Silver Ridge") (together, "Defendants"), alleging that Defendants violated the Fair Labor Standards Act ("FLSA"). The Court granted Defendants' motion for summary judgment (ECF No. 75). Defendants now seek a fee award and costs (ECF No. 84). For the reasons discussed below, the Court denies Defendants' fee petition and grants Defendants' amended cost bill.

## BACKGROUND

Llanes filed this FLSA action in February 2018, alleging minimum wage and overtime violations. (ECF No. 1.) Defendants moved for summary judgment in April 2019, on the ground

that Llanes does not qualify for individual FLSA coverage because she was not engaged in commerce or in the production of goods for commerce, and Silver Ridge does not qualify for FLSA's enterprise coverage because it is a local business operating wholly within Oregon. (Defs.' Mot. Summ. J. at 2.) The Court agreed, granted the motion, and entered judgment for Defendants. (Op. & Order at 12.) The Court's analysis of Llanes' individual FLSA coverage turned on whether Llanes engaged in activities that were directly related to interstate commerce. (Op. & Order at 8.)

During discovery, Defendants served Llanes with an interrogatory that asked her to list her job duties. (Decl. of Vivek Kothari ("Kothari Decl.") Ex. 4 at 2, ECF No. 86-4.) Llanes responded, *inter alia*, that she "us[ed] the internet to order goods, including goods from out of state, for use in the business; [and used] telephone and mails to refill patient medications including through out-of-state mail-order pharmacies[.]" (Kothari Decl. Ex. 4 at 3.) Later, Defendants' counsel asked Llanes at her deposition whether "any out-of-state mail order pharmacies [were] used to refill patient medication?" (Kothari Decl. Ex. 1 at 6.) Llanes replied "[n]o." (Kothari Decl. Ex. 1 at 6.) Defendants' counsel asked Llanes if she "use[d] the internet to order any goods, including goods from out of state, for use in the business?" (Kothari Decl. Ex. 1 at 7.) Llanes replied "[n]o." (Kothari Decl. Ex. 1 at 7.) Defendants' counsel asked Llanes whether she had an opportunity to review her interrogatory responses, and she responded that she had. (Kothari Decl. Ex. 1 at 7.) Defendants' counsel asked Llanes several times if she "underst[ood] that it was not truthful for [her] to state that [she] had used the internet to order goods, including goods from out of state[,]" and Llanes replied that she could not answer. (Kothari Decl. Ex. 1 at 9-11.)

///

**DISCUSSION**

## I.    ATTORNEY'S FEES

Defendants ask the Court to order Llanes to pay their attorney's fees because Llanes lied in her interrogatory responses in an attempt to establish an essential element of her FLSA claim.

### A.    Legal Standards

"Federal courts that award attorney's fees, unless statutorily prescribed, follow the 'American Rule' as set out in *Aleyska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975). There, the Court stated the general rule that, absent a specific provision of Congress, a litigant may not recover attorney's fees." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985). FLSA makes "fee awards mandatory for prevailing plaintiffs . . . . [but] does not specifically provide attorney's fees to prevailing defendants. We must therefore look beyond the Act for an exception to the American rule." *Id*; *see also Flanagan v. Havertys Furniture Cos., Inc.*, 484 F. Supp. 2d 580, 583 (W.D. Tex. 2006) ("In the absence of an express provision in the ADEA or FLSA that permits attorney's fees to a prevailing party, the 'American Rule' applies[.]").

"Under the 'American Rule,' litigants ordinarily are required to bear the expenses of their litigation unless a statute or private agreement provides otherwise." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (citations and quotation marks omitted). "Several exceptions to the American Rule have developed, however, based on the equitable powers of the court . . . to award attorney's fees when overriding considerations of justice seem to compel such a result[.]" *Dir., Office of Worker's Comp. Programs, U.S. Dep't of Labor v. Robertson*, 625 F.2d 873, 879 (9th Cir. 1980) (citations and quotation marks omitted). "The 'bad faith' exception provides for the awarding of attorney's fees when the losing party has acted vexatiously or

oppressively, and the rationale underlying the exception is therefore punitive." *Id.* (citing *Hall v. Cole*, 412 U.S. 1, 5 (1973)).

"Bad faith conduct encompasses a range of willful improper conduct, including taking actions that delay or disrupt litigation or hamper enforcement of a court order, or willfully abuse the judicial processes." *Guerra v. United States*, 75 F. Supp. 3d 1276, 1281 (W.D. Wash. 2014) (citing *Fink v. Gomez*, 239 F.3d 989, 992-93 (9th Cir. 2001)). "The appropriate focus for the court in applying the bad-faith exception to the American Rule is the conduct of the party in instigating or maintaining the litigation . . . exhibited by, for example, its use of oppressive tactics or its willful violations of court orders." *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 345 (2d Cir. 1986). "A specific finding of bad faith or conduct tantamount to bad faith is required for inherent power sanctions." *Physician's Surgery, Inc. v. German*, 311 F. Supp. 3d 1190, 1197 (S.D. Cal. 2018) (citation omitted). "The standards for bad faith are necessarily stringent." *Odbert v. United States*, 576 F. Supp. 825, 828 (E.D. Cal. 1983).

## B. Analysis

Defendants argue that Llanes lied in her answers to their interrogatories, and that her dishonesty constitutes bad faith and justifies a fee award. Llanes counters that "[w]ith a relatively unsophisticated immigrant plaintiff, it is understandable that some facts may have been lost in translation[.]" (Pl.'s Resp. at 3.) Llanes adds that when she "was asked specific questions at deposition, testifying through a translator in her primary language of Tagalog, she could and did correct any previous misunderstandings by testifying truthfully about the specific facts of her job duties." (Pl.'s Resp. at 3.)

Although the Court is troubled by Llanes' misrepresentations in her interrogatory responses, the Court cannot conclude on this record that Llanes willfully engaged in improper conduct. *See Byrne v. Nezhat*, 261 F.3d 1075, 1123 (11th Cir. 2001) ("Standing alone, a false or

inconsistent statement in a deposition does not compel the conclusion of bad faith."), *abrogated on other grounds by Jackson v. Bank of Am., N.A.*, 898 F.3d 1438 (11th Cir. 2018); *see also Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1298 (9th Cir. 1982) (declining to conclude that the defendant acted in bad faith absent an explicit finding that the defendant knew its employee lied and relied on that lie in defending against the claim); *cf. Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985) (finding bad faith when the defendant engaged in a cover-up by fabricating a scientific record to strengthen its position). The excerpts from Llanes' deposition transcript, and the fact that she required a Tagalog interpreter at her deposition, reveal that English is not her primary language. In light of her language barrier and counsel's explanation that the information Llanes provided to him was "lost in translation," the Court cannot conclude that Llanes intentionally misrepresented facts in her interrogatory responses.

The Court recognizes that if Llanes had been truthful in her interrogatory responses, Defendants could have moved for summary judgment earlier and short circuited some of the lengthy and expensive litigation that ensued. Nevertheless, the requested $168,259 fee award is too punitive here.[1] The cost award alone should serve as a sufficient deterrent, to both Llanes and her counsel, against persisting in a case that lacks merit, and the Court trusts that Llanes' counsel will take steps to ensure that his clients submit accurate and verified responses to interrogatories in future cases. For all of these reasons, the Court declines to order Llanes to pay Defendants' attorney's fees.

///

///

---

[1] The Court notes that Llanes earned only $3,000 per month while employed at Silver Ridge. (Defs.' Mot. for Summ. J. at 5.)

## II.    COSTS

Defendants also seek to recover $2,344.49 in costs as the prevailing party.[2] Federal Rule of Civil Procedure 54(d)(1) provides, in part: "Unless a federal statute, these rules or a court order provides otherwise, costs—other than attorney's fees—should be allowed by the prevailing party." Taxable costs are set forth in 28 U.S.C. § 1920. Although the court may deny costs, Rule 54(d)(1) "creates a presumption in favor of awarding costs to the prevailing party, and a district court has limited discretion to deny fees under the rule." *Goldberg v. Pac. Indem. Co.*, 627 F.3d 752, 758 (9th Cir. 2010).

### A.    Deposition Costs

Defendants request $2,135.94 for deposition costs: $486.92 for Zalewski's deposition, $962.75 for Llanes' deposition, and $686.27 for the interpreter services required for Llanes' deposition.

"Fees for printed or electronically recorded transcripts necessarily obtained for use in the case[,]" are taxable costs. 28 U.S.C. § 1920(2); *see also Frederick v. City of Portland,* 162 F.R.D. 139, 142 (D. Or. 1995) ("Costs related to depositions are generally available to a prevailing party under 28 U.S.C. § 1920."). Depositions relied on to determine genuine issues of fact are "necessarily obtained for use in the case." *See Yasui v. Maui Elec. Co., Ltd*, 78 F. Supp. 2d 1124, 1128 (D. Haw. 1999) ("Yasui's deposition was relied on to determine when Yasui knew or should have known about his causes of action. The other depositions were examined to determine whether genuine issues of fact existed. Accordingly, IBEW is entitled to $3,367.44 in

---

[2] Defendants initially sought $25,102.80 in costs, which included online research, messenger service, and Federal Express costs. (ECF No. 87.) In response to Llanes' objections, Defendants submitted an amended cost bill totaling $2,344.49 (Defs.' Reply at 5). *See Alexander Mfg., Inc. Emp. Stock Ownership and Tr. v. Ill. Union Inc. Co.*, 688 F. Supp. 2d 1170, 1176 (D. Or. 2010) (holding that computer research, messenger service, and mail expenses are not recoverable costs).

costs for its deposition transcripts."). Additionally, § 1920(6) includes "compensation of interpreters" as taxable costs.

The Court finds that Llanes' and Zalewski's depositions were "necessarily obtained for use in the case," as the Court relied upon the testimony to evaluate the parties' motions for summary judgment. The Court therefore grants Defendants' request for $1,449.67 for those depositions, as well as $686.27 for the interpreter.

### B. Hearing Transcript

Defendants also request $208.55 for the cost of the transcript from the February 25, 2019, hearing on Defendants' motion to dismiss. Llanes objects, arguing that ordering the transcript was not necessary.

"Expenses for the trial transcript and for transcribing arguments, pretrial proceedings and the like are allowable costs." *United States v. Metro. Disposal Corp.*, 622 F. Supp. 1262, 1267 (D. Or. 1985) (citing *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 224 (9th Cir. 1964)). "However, the statute requires that the transcripts be 'necessary.'" *Id.*

Defendants correctly note that they cited the February 25, 2019, hearing transcript in their Motion to Strike and Motion to Dismiss. (Defs.' Reply Mot. Att'y Fees at 4.) Having relied on the transcript in a court filing, Defendants have established that the transcript was reasonably necessary to litigate this case. *See Icebreaker Ltd. v. Gilmar, S.p.A.*, No. 3:11-CV-00309-BR, 2013 WL 638926, at *7 (D. Or. Feb. 20, 2013) (awarding costs to party that established hearing transcript was used in part to support its motion for summary judgment); *U.S. ex. rel. Berglund v. Boeing Co.*, No. 03:02-cv-193-AC, 2012 WL 697140, at *3 (D. Or. Feb. 29, 2012) (awarding hearing transcript cost where transcript was used to defend the party's position). Accordingly, the Court approves the $208.55 cost of the hearing transcript.

### C. Summary of Costs

In summary, the Court orders Llanes to pay: $486.92 for Zalewski's deposition, $962.75 for Llanes' deposition, $686.27 for interpreter services, and $208.55 for the February hearing transcript, for a total cost bill of $2,344.49.[3] *See Nelson v. Fiskars Brands, Inc.*, No. 3:14-CV-00685-SB, 2015 WL 7306426, at *2 (D. Or. Nov. 19, 2015) ("Although this Court is concerned that forcing a plaintiff to pay a substantial cost might deter future litigants, here [the prevailing defendant] seeks a relatively modest fee award [of $2,697.99] that is not large enough to pose a risk of chilling future litigation.").

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' petition for attorney's fees (ECF No. 84), DENIES Defendants' bill of costs in the amount of $25,102.80 (ECF No. 87), but GRANTS Defendants' $2,344.49 amended cost bill.

**IT IS SO ORDERED.**

DATED this 14th day of January, 2020.

_____
STACIE F. BECKERMAN
United States Magistrate Judge

---

[3] The Court very much appreciates the pro bono representation provided by the many attorneys, paralegals, and other personnel at Markowitz, Herbold PC, and encourages counsel to apply for the full $10,000 reimbursement of out-of-pocket expenses provided by the Court's pro bono program. The Court directs counsel to its website for a description of allowable expenses (including Westlaw research), and a form motion:
https://www.ord.uscourts.gov/index.php/attorneys/pro-bono-service/reimbursement-of-expenses.